IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIANE RECZEK,<br><br>   Plaintiff,<br><br>  v.<br><br>JHA WILMINGTON, INC.,<br><br>   Defendant. | Civil Action No. 07-013-GMS |

## MEMORANDUM

### I. INTRODUCTION

On January 9, 2007, plaintiff, Diane Reczek ("Ms. Reczek") brought this action against defendant, JHA Wilmington, Inc. ("JHA"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 at 42 U.S.C. § 1981a. On July 3, 2007, the court ordered the clerk to enter a default judgment against JHA pursuant to Federal Rule of Civil Procedure 55(a) for failure to appear and ordered an evidentiary hearing to determine the extent of Ms. Reczek's damages.[1] After receiving testimony and reviewing the documents in evidence, the court enters judgment in favor of the plaintiff and awards damages and attorney's fees and costs as follows: (1) damages for back pay in the amount of $47,716.93; (2) damages for emotional distress in the amount of $100,000; (3) damages for medical costs in the amount of $736.00; (4) punitive damages in the amount of $60,000; and (5) attorney's fees and costs in the amount of $12,956.50 and $463.75, respectively.

---

[1] The defendant was initially represented by counsel in this action. After, however, failing to pay its legal fees, JHA's original counsel was permitted by the court to withdraw. Subsequently, the defendant failed to retain or identify new counsel to proceed in this case.

## II. BACKGROUND

The plaintiff, Diane Reczek began working for the defendant as a Licensed Practical Nurse/Nursing Unit Manager on December 28, 2004. While she was employed by the defendant, Ms. Reczek was subject to various instances of racial harassment and discrimination based on the fact that she is Caucasian. This discrimination came in the form of racially-derogatory comments and gestures, referring to Ms. Reczek as "white girl" and telling her that all Caucasians smell like "colostomy bags." Ms. Reczek also received reprimands and written warnings for conduct not usually constituting such discipline for her African-American co-workers, and was subject to an "office pool" as to the date she would resign as a result of the discriminatory treatment.

Ms. Reczek notified the defendant about the discriminatory behavior many times through various complaints she made to the defendant's management. The defendant, however, failed to investigate her concerns or to take any remedial action on her behalf. Furthermore, the defendant was aware that other Caucasian employees were victimized by similar acts of racial harassment prior to hiring Ms. Reczek. As a result of the defendant's failure to remedy the discriminatory behavior, Ms. Reczek was forced to involuntarily resign her position of employment on September 28, 2005.

## III. DISCUSSION

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend the action and that fact is made apparent by affidavit or otherwise, the clerk of the court shall enter the party's default. Fed. R. Civ. P. 55(a). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of the damages, will be taken as true." *Henry v. Fesmare*, No. 03-827-GMS, 2005 WL

2

22243243, at *1 (D. Del. Sept. 15, 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). The court, however, is required to calculate the appropriate amount of damages and cannot simply accept the plaintiff's representations on that matter as factually correct. *Compendia Songs v. On Top Communications, L.L.C.*, No. 04-252-GMS, 2004 WL 2898070, at *2 (D. Del. Nov. 15, 2004).

In Plaintiff's Memorandum In Support Of Claim For Damages (D.I. 18), Ms. Reczek demands damages consisting of back and front pay, medical costs and charges, emotional distress, punitive damages, and attorney's fees and costs. On April 11, 2008, the court held a hearing to determine whether the plaintiff's requests were reasonable. After considering the plaintiff's arguments and the evidence presented at that hearing, the court concludes that the following relief is warranted.

### A. Back and Front Pay

Damages in the form of back pay are available to a successful Title VII plaintiff who was constructively discharged from, or otherwise forced to abandon, her employment. *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006). Relief may also be granted in the form of front pay if the plaintiff can also show that reinstatement of her position is not possible. *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985). The appropriate standard used to measure a back pay award is the difference between the actual wages earned and the wages the individual would have attained, but for the alleged discrimination. *Gunby v. Pennsylvania Electric Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988).

During Ms. Reczek's employment with the defendant, she earned $28.75 an hour (*i.e.*, $59,800.00 per year). After she was constructively discharged in September 2005, the plaintiff was unable to obtain employment until April 2006. Her new position initially paid $25.00 per

hour (*i.e.*, $52,000.00 per year), and was increased to $26.33 per hour (*i.e.*, $54,766.40 per year) at the end of first year.

To compensate the plaintiff for the difference in the amount of wages that she earned after she was constructively discharged, as compared to what she would have earned but for the defendant's discriminatory conduct, the court concludes that the plaintiff is entitled to back pay in the amount of $47,716.93.[2] Although Ms. Reczek will not be returning to her employment position, as the defendant is no longer in business, the court declines to award additional damages in the form of front pay.

### B. Emotional Distress

To recover compensatory damages in a Title VII action, a plaintiff must present evidence of actual injury. *Gunby* at 1121 (addressing damages pursuant to 42 U.S.C. § 1981). This court has previously determined that intangible injuries, such as sleeplessness, headaches, humiliation, and embarrassment are sufficient to support an award of compensatory damages. *See, e.g., L.T. Blackshear v. City of Wilmington*, 15 F. Supp. 2d 417, 430 (D. Del 1998). Merely speculative damages, however, cannot be awarded without sufficient evidence to support humiliation or emotional injury. *Gunby*, 840 F.2d at 1121.

The court finds that there is sufficient evidence to support an award of damages for emotional distress in this case. In making this determination, the court is guided by the decision in *Lafate v. Chase Manhattan Bank*, 123 F. Supp. 2d 773 (D. Del. 2000). In *Lafate*, the plaintiff

---

[2] Using Ms. Reczek's income at the time she was constructively discharged from the defendant's employment as the starting point, the court calculates the plaintiff's back pay damages as follows:

| | | |
|---|---|---|
| 1. Seven (7) months of no income and no unemployment | | $37,883.33 |
| 2. One (1) year at $25.00/hour ($52,000.00/year), salary differential | | $7,800.00 |
| 3. One (1) year at $26.33/hour ($54,766.40/year), salary differential | | $5,033.60 |
| **Total Back Pay** | | **$47,716.93** |

4

brought an action against a former employer alleging violations of Title VII and Section 1981. *Lafate*, 123 F. Supp. 2d at 776-77. The jury returned a verdict in favor of the plaintiff on her retaliation claim and awarded her $100,000 in compensatory damages. *Id.* at 777. The defendant argued that the jury verdict was "clearly excessive," thus warranting remittitur. *Id.* at 789. The court, however, disagreed. The court held that evidence of subjective claims that the plaintiff suffered headaches and an upset stomach, along with the fact that the plaintiff sought medical attention, was sufficient to support an award of $100,000 in compensatory damages. *Id.*

In this case, Ms. Reczek testified that she felt embarrassed, anxious, and depressed as a result of the discriminatory conduct. She was prescribed Xanax because she was having trouble sleeping and sought medical attention for stomach problems, all of which she attributed to her discriminatory work environment. In addition, Ms. Reczek testified that the discriminatory treatment caused her to feel apprehensive toward African-American co-workers at her new employment. Here, like the plaintiff in *Lafate*, Ms. Reczek's testimony and the facts support an award for emotional distress in the amount of $100,000. The court also orders that Ms. Reczek be awarded payment for medical costs and related charges in the amount of $736.00.

### C.     Punitive Damages

Under Title VII, a plaintiff may recover punitive damages in a case of intentional discrimination "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kant v. Seton*

*Hall University*, Nos. 06-4448, 06-4464, 2008 WL 2212006, at *5 (3d Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

In determining the applicability and appropriate measure of punitive damages in this case, the Eighth Circuit's decision in *Block v. R.H. Macy & Co., Inc.* is instructive. In *Block*, a jury returned a verdict in favor of a plaintiff who alleged violations of Title VII and Section 1981 against her former employer. *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1243 (8th Cir. 1983). That verdict included an award of $60,000 for punitive damages. *Id.* The plaintiff was subjected to racially derogatory remarks and was threatened with loss of her employment. *Id.* The *Block* court held the plaintiff had been intentionally discriminated against by agents of the defendant and these agents were of sufficient managerial rank within the corporation that their intent could be imputed to the defendant for the purpose of making an award of punitive damages. *Id.* at 1247. As a result, the award of $60,000 in punitive damages was upheld. *Block*, 712 F.2d at 1248.

Taking all well-pled facts of the complaint as true, the court finds that Ms. Reczek has alleged sufficient evidence to support an award for punitive damages. She registered multiple complaints with the defendant's management regarding the discriminatory treatment, yet no investigation ever took place. In addition, the defendant's management was aware of other Caucasian employees who were victimized by similar acts of racial harassment by the same offenders prior to hiring Ms. Reczek, and yet again, never took any remedial action. The actions (and inaction) of the defendant's management can (and should), therefore, be imputed to the defendant for the purpose of determining punitive damages. Accordingly, the court is satisfied that these facts are sufficient to support an award of punitive damages in the amount of $60,000.

### D. Attorney's Fees and Costs

In an employment discrimination action, the court has discretion to award reasonable attorney's fees to the prevailing party. 42 U.S.C. §2000e-5(k). The Third Circuit has established the following test to determine whether a party qualifies for an award of attorney's fees:

> First, the plaintiff must be a 'prevailing party'; *i.e.*, the plaintiff must essentially succeed in obtaining the relief sought on the merits. Second, the circumstances under which the plaintiff obtained the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.

*Sullivan v. Commonwealth of Pennsylvania Dept. of Labor and Indus.*, 663 F.2d 443, 452 (3d Cir. 1981) (citations omitted). Moreover, attorney's fees are generally available "whenever a civil rights cause of action ultimately results in the plaintiff having obtained relief." *Id.* at 447. Here, having obtained a default judgment, Ms. Reczek is, indeed, the prevailing party in her Title VII action and therefore an award of reasonable attorney's fees is appropriate. Ms. Reczek's counsel submitted affidavits concerning the fees and costs associated with this action. The court has reviewed these affidavits and finds the requested fees and costs to be reasonable. As such, the court awards Ms. Reczek attorney's fees and costs in the amount of $12,956.50 and $463.75, respectively.

## IV. CONCLUSION

For the foregoing reasons, the court enters judgment in favor of the plaintiff and awards damages and attorney's fees and costs accordingly.

Dated: October 27, 2008

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIANE RECZEK, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>JHA WILMINGTON, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 07-013-GMS |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. A judgment shall be entered in favor of Diane Reczek and award her damages and attorney's fees and costs as follows:

    (a) damages for back pay in the amount of $47,716.93;

    (b) damages for emotional distress in the amount of $100,000;

    (c) damages for medical costs in the amount of $736.00;

    (d) punitive damages in the amount of $60,000; and

    (e) attorney's fees and costs in the amount of $12,956.50 and $463.75,

    respectively.

Dated: October 27, 2008

CHIEF UNITED STATES DISTRICT JUDGE

8